2014-12-64 and 12-90 Good morning, Ms. Petrini. Good morning. I was thinking about this case and how to present it to you because there's a lot of issues as you probably gathered reading the briefs. We were thinking about it too. Yeah. It's really ultimately a pleading case with the exception of the inventorship claim. Did we properly plead 43A? Did we properly plead common law and fair competition? And did we properly plead all of the prongs of California's statutory unfair competition, 17-200? I don't want to set you back at the beginning. Okay. Just to quote the district court, he described it as a case in full disarray, constantly evolving and never ending. So you've obviously perceived that's the way the court viewed it with difficulty in defining the issues. Why don't you deal with the inventorship issue first? That's fairly clean. Okay. That's not a problem. On the inventorship issue, what the judge did was he lined up the grape crate, lug, whatever you want to call it, in the 293 patent and said, what did we contribute to that embodiment versus looking at the claims? And we pled that, look, it was the claims. And then later on we said it was Claim 4 and 6 that covered the inventive contribution of Ray Growen. What was precisely the inventive contribution? Oh, for Mr. Growen. I can't see. I've got to put my glass on. I'm looking at Claim 4. You can point me to a precise element or describe it. Right, right, right. He contributed the placement of the venting holes for adequate ventilation. Which element are you on? Can you give me a column and line number for the claim? Let me find it. I'm sorry. Okay. It is, this is, I'm drawing from the patent on A117. It's our evidentiary site. And it's the final element in Claim 6 where said containers are juxtaposed such that when a, it's column 14. I can't, I think that's probably what, line 21 or something along those lines. So I'm still not entirely following this. It just says when such containers are juxtaposed such that a cooled airflow is directed towards the juxtaposed containers, the majority of the cooled airflow is directed through the sidewall apertures. But this, what you started out by saying was that Mr., is his name Garawan? Growen. It's like growling, but growling. Growen. Okay. Mr. Growen contributed the placement of the holes, but this claim doesn't cover placement of holes. This claim simply covers apertures which allow cool airflow. It doesn't have any particular configuration of holes, as best as I can tell, this claim. So are you saying that he conveyed to them the concept of having holes at all? That the original drawing that they showed him had no holes? No, I'm not saying that because no one knows what the original drawing was. Actually, there's a factual dispute on what the drawing was that was showed to Mr. Growen with respect to the grape lug. The conversation that was had was, hey, look, I have an idea for a stone fruit container, and this is what we need, and you need to have adequate ventilation and to have this cross cooling in order for the fruit or vegetables, whatever, not to rot. It's perishable items. So a point of clarification on this. You said the original drawing. Are you saying that this is an exchange I guess they had back in 93 or so? Mr. Growen, did he draw something? Right. He said... And is that in the record? It is. And he said that he believed that he gave drawings on a scratch pad that was on A-50-59. Is his drawing in the record? The drawing? No, we don't have the physical drawing. It's his recollection of what he did. And he testified that he contributed in terms of the actual container. This is to the harvest. Right, exactly. And the point we're trying to make, and I think this is where it gets lost, is that we're not saying that he made the grape lug. He's saying parts of the unique features that were part of the harvest tote found their way into the claims of this patent. And even the hearing admits in its brief on page 13 that the patent application was not finalized at the time they met with Mr. Growen. Yes, but I guess what I'm not understanding is I'm not understanding his testimony or the corroborating testimony to articulate any element of any claim to which he contributed any conception. Because you're saying, well, it can't be that they had no concept of ventilation or the need for ventilation beforehand. No one testified to that effect. And all this claim covers is having holes, apertures. It doesn't say where they are, how they should be located, how they should be distributed. So if he contributed distribution designs to the harvest tote, which he may well have, that's not what's claimed here. And so I don't understand what he contributed to in the way of conception for any claim in this patent. That's the problem that I'm having. Right. Well, we've also in the record, we said that he's contributed to the design and structure of the corners for the close juxtapositioning in the field bins and on pallets. And that would be sufficient, that would be covered by the claim language that we're looking at. And that on the record was A5049 to 53 and then 5076. So really there's only an argument that there's an inference that Mr. Growen provided some novel feature, correct? There's no evidence. It's just an argument that you're making that there's an inference here. Well, no, I think there is evidence. And that's what we've given you the testimony where he said what his contributions were to the harvest tote carried over into the broad language of that claim. Isn't it the case that he couldn't point to a single non-novice feature that contributed to the invention? That's true. He was looking at the one embodiment of the grape blood though. He wasn't looking at the claim. If he's looking at it, at the actual claimed invention, he can't point to it and say that's mine. I mean, he couldn't even do that. Right. And keep in mind, Mr. Growen is 80 years old and he's a farmer. He is not someone, he's a creative guy. Yeah, but he brought a lawsuit. I understand that. But he needs to have evidence to support his case. And here he's claiming to be an inventor, but he can't even point to a single non-novice feature of the claimed invention and say, that's mine right there. Right. His right-hand man, Mr. Dever, did. And he did it in quite a bit of detail. And that was in the record. Most that you could point to was a couple of lines at the end of claim six. Claim six is more than a column long, having all sorts of claim limitations. The district court found what evidence there was falls short. He had to show that he made some inventive contribution. And the court found that he did. Do you want to talk a little bit about unfair competition? I absolutely would like to. The time is moving, so... I understand. There's no question that California common law unfair competition includes misappropriation. That's a city solutions case. It's a 2004 Ninth Circuit case that is still good law. If there's any case that is different from that after that, the Ninth Circuit rule is that the city solutions be in the earlier case controls. Are you required to plead misappropriation? We did plead misappropriation. All over that complaint was, look, you took our product, you copied our product. And with respect to the 43A, we had language in there that the products were confusingly similar on that. We never pled a reverse palming off case on the 43A. But with respect to the pleading requirements for the common law unfair competition, we put enough facts out there that would clearly put them on notice that it was a misappropriation claim. And that is clear from the fact that they didn't even allege affirmative defenses directed to a passing off claim in their answer. They tried to put them in their jury instructions with abandonment, classic fair use, and nominative fair use. So there's no question that Rayrig was on notice that this was about taking the harvest tote and making the second generation harvest tote and cutting us out of the deal and not paying us royalties on that. This is similar to a holdover licensee case. We alleged that they were, Rayrig is the exclusive licensee of Growen. And that was in the original complaint and it was in the First Amendment complaint. So in my view, there's no way that we did not plead a common law unfair competition claim based on misappropriation. And the case law is solid on that. We've identified all of that in the brief. Another thing about the pleading, and we found this case that just issued in the Ninth Circuit in August of 2004, Compton v. Countrywide v. Countrywide Financial Corporation, 761-F3-1046. And the issue there was it was an unfair competition pled under Hawaii law. And in that case, they had incorporated allegations by reference, which is exactly what we did. And it said that was sufficient, taking the complaint as an overall view on that. In terms of 43A, and I would like to return to that, because I think that's really important. We got a dismissal without leave to amend on that. We did not allege that that was a reverse pomming off case. The defendant, Rayrig, appellate here, argued that it was reverse passing off. The judge went with it and then we went down this path. And we got a dismissal without leave to amend. If we were alleging a reverse pomming off, we would be alleging that they took our product and put their name on it. They took our product and put our name on it. It was a complete modification. And that permeated the complaint throughout, both in the original complaint, because that's what you need to look at for the 43A. And 43A covers things of that nature. We cited the summit case, which is machine tooling versus Victor CNC system. That's based on Smith versus Montoro. Under Ninth Circuit law, what is the standard I use to review the district court judge's determination about what the complaint does and does not plead? That would be a de novo review, because it was a motion to dismiss. And you have to obviously look at the factual underpinnings to assume those to be true, that we've alleged on that front. I've got about two and a half minutes left. Well, that includes rebuttal time. It depends on whether you want to say something. Yes. Yes, I would. That's what I was leaving. All right. We'll hold it for you then. Okay. Thank you. Mr. Lieberman. May it please the court. My name is Scott Lieberman. And sitting with me at council table is Jonathan Hersey. I'd like to start my argument today on behalf of the appellee, Rarick Pacific Company, on what constitutes California common law unfair competition, what Garawan actually pled and advanced throughout the case, and why the district court didn't abuse its discretion in refusing to permit Garawan to add a brand new theory of common law unfair competition on what the court called the literal eve of trial. The definition of unfair competition under California law has been described through a series of cases as one that is generally thought to be synonymous with passing off or acts analogous to that when one is trading on a competitor's reputation in the marketplace. But your opponent is arguing misappropriation. They're saying that now, Your Honor, yes. What Garawan Farming told the court was that its claim was based on traditional passing off. And that was stated repeatedly all the way beyond the pretrial portion of this case. As the court said, and I believe it said it quite well in its June 3rd order, which was the day before trial, that this is not how pleading and discovery practice work. A plaintiff cannot slowly develop and unveil its claims. In the First Amendment mended complaint, I'm reading from paragraph number 37. Defendant has engaged in unfair business practice by taking Garawan's proprietary design for the harvest toast, and under false pretenses and or without informing or involving Garawan, applying for patent protection for such design, developing, selling the second generation harvest toast based on Garawan's harvest toast design without authorization from Garawan or payment of royalties to Garawan. I don't know, that sounds like a clearly pled misappropriation claim. And that is misappropriation, but I think we have to define what type of misappropriation that they've pled here. Based on what you've just read, Judge Moore, that type of misappropriation is of the design of the harvest toast, not of the actual physical product itself. And misappropriation under the common law in California, based on a misappropriation of design or confidential information or proprietary information, even if it doesn't rise to the level of a trade secret, has been superseded by the Uniform Trade Secret Act in California. And so that's exactly what they pled. That's exactly what they advanced here. And as we argue to the district court as well, that claim has been what California courts say is displaced. And so if you look at the Casey Multimedia case, and there's a whole line of cases after that, that any claim based on a misappropriation of confidential design information, even if it doesn't rise to the level of a trade secret, and even if a trade secret claim isn't alleged, is superseded. So did the district court in this case find what you just argued? I thought he found they never pled a misappropriation claim and that their claim was limited to passing off and reverse passing off. That was an issue immediately following the pretrial conference. And he asked Garaldin Farming to clarify the scope of its claim for common law and fair competition. They did by representing to the court that they had a claim for misappropriation of a physical product at that point. Really, it did nothing more than... And to say that it was a claim based on traditional passing off. And that's where this whole case went until Garaldin Farming made a motion to amend the pretrial order. This was weeks before trial, less than two weeks before trial, to say, here's what we really want our claim to say. But did... You still didn't answer my question. Okay. Did the district court make a finding that the USTA preempts any common law claim for misappropriation framed as I read in paragraph 37? No, it did not make a determination of that. Its dismissal wasn't based on the theory that you presented to me on why it would have been reasonable to dismiss because of a preemption. That's correct. Based on the court's decision, you called it a dismissal. I think the court has really used its inherent powers under Rule 16 of the federal rules to conform Garaldin's claim to the evidence that was presented to the court. And based on the claim that was presented to the court, that the district court did not therefore abuse its discretion in limiting a theory of its claim for unfair competition to one under which the plaintiff had basically asserted its claim to be. Your opponent argues that they had an appropriate misappropriation theory fled from the original complaint and also in the First Amendment complaint. What's your response to that? The response is that they did not have an appropriate theory. And part of what I'd like to address as well is any claim for unfair competition under the common law of California has two other key ingredients that we're absolutely missing from this case. One is there must be some deception to consumers about the actual unfair practices. And two, the unfair practices must be between competitors. There must be some kind of business competition here. As to the first point, there was no consumer deception. I think the record makes fairly clear that Guralen Farming and Rarig Pacific Company are not competitors. One is a farmer and one is an injection molder of plastic crates. And if you look at the Skidmedica versus Histogen case, I think this is fairly much on point, which held that a common law unfair competition came as rooted in consumer deception. And in that case, there were two completely different companies and the claim for unfair competition failed. The second point in the record here is that both Mr. Guralen and Mr. Deaver testified that they did not want Guralen's name to be used in marketing the product itself. So there could be no deception to the consumers. They testified this to say that other farmers who would be the consumers or purchasers of this particular product would be less likely to purchase the product if they knew it was made by one of its competitors, Guralen Farming. So they specifically instructed Rarig to keep their name off of the box and not to have Guralen affiliated with the box. As a result, there can't be consumer confusion, which is an absolutely essential element to any claim for unfair competition. As to the competition between competitors, and I think Guralen Farming has limited itself as well to this, the date by relying on simply the dissenting opinion in the Celltech case out of California, in which says that this controlling statement, a law being that it's fraud practiced by one in securing the trade of a rival dealer. And I think the rival dealer language is important here. Guralen has admitted throughout this case that it is not a competitor, it's not a dealer of any particular tote or competing product. And so as a result, in looking at even the Trovan versus Pfizer case out of California as well, there is another missing element of any claim for unfair competition. So that's a long-winded answer, Judge Reynad, to your question of has it been properly stated. And I think the answer to that question is no, and the district court didn't even reach those two points. What about the issue of inventorship? Inventorship. The district court looked at all the evidence in front of it and correctly granted summary judgment on this claim, really for two significant reasons. One, as the court has noted previously in this argument, that the alleged inventor couldn't identify a single inventive contribution that he made to this product. It's important to note that what they call corroborating testimony doesn't corroborate anything if the inventor can't tell you what it is that he actually invented. The court even noted that there were significant gaps in Mr. Garawan's utter inability to remember anything of any significant, of anything of substance that would support the claim. That's in the record. I think the other important fact here, too, is that Rare Pacific Company had fully engineered, fully developed, fully designed, and was showing this product to potential consumers before it ever met with Garawan Farming. And as the district court noted, it had full blueprint schematic drawings developed as of June 14, 1993. It was incumbent then, and that's undisputed, that's in the record as undisputed, it was incumbent on Garawan then to raise clear and convincing evidence that they had provided some kind of an inventive contribution prior to June 14, 1993. And I think the deposition testimony of everybody involved makes clear that Garawan Farming couldn't, it didn't meet that burden in any event, and so there is no claim for correction of patent inventorship. I think it's also important to note as to this claim, and we've been talking about previously some of the claim language itself, that Garawan Farming never attempted to construe the language of this patent. They made a single paragraph reference to it in its opposition to motion for summary judgment, never advanced any attempt to construe the actual language of the claims throughout the case, it's not in the record. And as the Johns Hopkins case that we cited says, the casual references to things below shouldn't be considered for appeal on the first time. The district court also said that Garawan could have attempted to show that it had contributed language to the patent, it didn't do so, and that's why it found that it did on alternate grounds, on failure to provide anything of substance to the patent. Anything further, Mr. Lieberman? I was going to address the 43A claim, Your Honor, if... Go ahead. I think it's also important to note here that Garawan Farming is not appealing the dismissal of its reverse passing off claim. If you look at the way that the claim is played in the original complaint, it really is one for reverse passing off. The sole allegation is that Rarick had misrepresented that it was the sole originator or the sole origin of the product itself, and under that theory, without giving Garawan due attribution, and under that theory, that is reverse passing off. I think you've taken my product and sold it as your own. Garawan admitted that it did not make any products. Garawan did not attempt to argue in the briefs that they had some other kind of a claim besides reverse passing off, and the district court found that it would be futile to allow such an amendment, given that Garawan does not produce any products, and that's an absolute requirement of a 43A claim under passing off. In closing, I would like to remind the court that we do have a motion pending for fees as a result of the Ninth Circuit transfer to this court, and as with any further questions, I'll conclude my argument. Thank you, Mr. Lieberman. Ms. Petrini has a little more than two and a half minutes to rebut. Got it. With respect to 43A, just out of the gate, there's no requirement for competitors. That's the Lexmark versus static control zone of interest case. It was decided in late March of 2014, all we need to allege is that there was injury to our business reputation and lost sales, which we did in the original complaint, and you will find that in paragraph 54A157 to 158. The other thing that we allege with respect to 43A, and this you'll find in paragraph 9, like I mentioned before, we did allege that Garawan was an exclusive licensee, and they were permitted to sell the harvest tote, and that we agreed to share in the cost of patenting, but effectively, we alleged ownership of that tote. A licensee doesn't own the name by definition, and in here, they didn't even own the product because we created it, and then later in the First Amendment complaint, we alleged that we owned the mold for it, and we paid for the mold for it. So throughout this, we alleged well beyond. We didn't allege reverse passing off. We alleged likelihood of confusion. But Mr. Lieberman is correct that if you were alleging misappropriation, it would be preempted by the California Uniform Trade Secret Act and the preliminary pretrial order. The district court actually said that expressly. No, he said that it was not preempted. They did not file a cross appeal, so I'm not sure why we're even talking about it. Passing off patent theory, it's unclear whether plaintiff's unfair competition claim, it's unclear what it could be premised on. Plaintiff cites a loan sentence. We had other two problems with this. Without any further authority, it's unclear whether this is representative of existing law, and second, plaintiff's reference to this passage can be at best interpreted as invoking some sort of common law misappropriation claim. However, claims for misappropriation of trade secrets or other confidential information are preempted by California's Uniform Trade Secret Act. It cites the code and then a California case, KC Multimedia. It seems like you may have pled something that sounded broader, but at all times, this district court was saying to you, I don't understand your theory. Your theory is completely and utterly unclear, and he kept holding. Your theory is X, and if it's Y, Y is preempted. Y is no good, and you never came in, and you never gave him this more thorough clarification of precisely what your theory was. So even if I read that one paragraph in your complaint as alleging misappropriation, the district court quite clearly held, as Mr. Lieberman said, that there's no basis for such a claim. It's preempted. Well, it's not preempted. It was based on, that's the other thing. You're saying if you're basing it solely on confidentiality. You didn't appeal that. You didn't appeal to us an argument that he found our misappropriation claim was improperly preempted. That's not on appeal. Well, he didn't, that wasn't, the finding was, look, if it's based on a product, which is what we were alleging, then it's not preempted, and we gave him the cases, and the district court went through that. So we're going down a path, again, on something that RARIG is advancing that is not really the reality of the case. We alleged you took our product. That, by definition, under the case law, it's not preempted. They didn't go into your warehouse and steal your product. You're saying they took your design, not you took our product. They didn't take your product. You didn't have any product. We're not required to have products as a licensee. No, but you are speaking, and I'm trying to get you to speak clearly about what it is that you think they took. They didn't take your product because you didn't have any product. You had a design, correct? We had a product. We paid for the mold. They took that product, and they created a derivative product. They were precluded by doing it under the confidentiality agreement and under their own negotiations that's in the record, that they said they would not make another stone fruit container product. Did you appeal a breach of contract claim? We didn't allege a breach of contract. Exactly. Isn't that what you're alleging now? We had an agreement. They said they wouldn't do it. Isn't that all a breach of contract, which isn't on appeal to us? I don't believe that it is. Look, a common law unfair competition claim can be based on misappropriation. It can be based on things sounding in tort or contract. And all of the conduct that was alleged amounted to unfair competition. To say that the law of unfair competition in California is clear would be a gross misstatement. It is murky. It's been identified by the court. It seems pretty clear in view of the facts of this case and in view of your complaint. I find the California law to be pretty clear. Your original complaint and your meta-complaint went to a misappropriation, if you want to call it that, of a design. They didn't come and steal 15,000 totes. The claim was they stole my design. Those four holes on the bottom of that crate, that's mine. That's what you're alleging. And the court found that you can't do that under the terms of the way you pledged your complaint. I'm not sure that I agree with you that you're limiting it that way, obviously. Keep in mind, they also took the name. That was in the complaint too. The combination of the two gives us misappropriation under common law and fair competition. It certainly gives us a claim under 43A and we were not allowed to, even given the opportunity to amend, to allege anything else. We weren't allowed the opportunity to try and fix that claim because the finding was you're alleging reverse patent. Did you allege any unlawful conduct? Unlawful conduct in terms of, well, for 43A or 17-200? For your unfair trade claims allegation. The common law unfair competition would satisfy the 17-200. And keep in mind, we were boxed into only an unfair component of 17-200 when we alleged all parts of that statute in the same claim. And we incorporated everything by reference. And that was a combination of an unfair common law and a 17-200 claim. And then when we tried to bring in the false marking, which would come in as an unlawful or certainly fraudulent activity, we were not allowed to amend our complaint. We were going to allege false marking under 292. But then we want to say, we're not going to let you amend at this late date. Well, we should be able to at least argue that to the jury. This is quintessential anti-competitive behavior. The testimony in the record is we're falsely marking these products, both the Harvest Toad and the second generation, because we want to ward off competitors. We want them to think they can't copy our stuff. Ms. Petrini, your time has long expired. So we thank you for your argument and we'll take the case on revisement. Thank you.